Good morning, Your Honors. James Harris for Appellant. I'd like to reserve four minutes for rebuttal. I would like to focus initially on what I think is the pivotal question, which is whether the incorporation of the bilateral employment rules constituted a delegation to the arbitrator to determine the availability question as to class arbitration. There are two independent reasons why the incorporation of bilateral rules does not have that effect. First is, this is an issue that has been considered and resolved by several of your sister circuits, and they've all uniformly agreed that incorporation of bilateral AAA rules that permit an arbitrator to determine his or her own jurisdiction does not have the effect of delegating the class availability issue to the arbitrator. And the reasoning in those cases is clear and correct. The standard for a delegation to the arbitrator of a question of arbitrability requires clear and unmistakable proof. There's nothing in those rules, the bilateral rules, that unmistakably and clearly delegates to the arbitrator that question. The second independent reason why it doesn't constitute a delegation to the arbitrator is that, and this is the subject of the supplemental authorities letter that we submitted yesterday, that under this court's recent decision in the Uber case, when you have an arbitration agreement that carves out particular types of claims, you can't read that agreement as delegating to the arbitrator the authority to consider, let me correct myself, when you have an arbitration agreement that carves out class issues, you can't read the arbitration agreement as delegating to the arbitrator the authority to determine class arbitration issues. And that's exactly what we have here. As the language from the arbitration agreement, which we quoted in our supplemental authorities letter, indicates that there cannot be collective or individual claims, and so you can't read that agreement as delegating the class availability question to the arbitrator, even if you were to assume that all of your sister circuits were incorrect in concluding that incorporation of the AAA rules has the effect that the claimants say that it does. So the only other issue, it seems to me, that I might focus on briefly, is whether this is, in fact, a gateway issue of arbitrability. And again, every sister circuit that has considered that question on the merits has concluded that the question of class arbitrability goes to the arbitrator's foundational jurisdiction as to whose claims the arbitrator is considering, and therefore it's exactly like the kinds of questions of arbitration, of arbitrability, that have long been considered to be presumptively for the court and not the arbitrator. Does the court have any questions for me? Thank you. Okay. Good morning. May it please the court, Jahan Saghafi for the defendant appellees, the five co-managers of guest stores pursuing arbitration before the AAA. Here, Judge Snyder got it right. Arbitration is fundamentally a matter of contract, and in their contract the parties chose to delegate class arbitrability to the arbitrator. Now guests may regret drafting the arbitration agreement this way, but guests signed the contract, the employees signed the contract, and this court cannot excuse guests from its contractual obligations. No, I didn't see that provision. It says that class arbitrability will be decided by the arbitrator? No. It says all issues will be decided by the arbitrator. So gateway issues and procedural issues are decided by the arbitrator. All means all. All includes class arbitration. It includes intellectual property disputes. It includes punitive damages issues. It includes cases that are above a million dollars, below a million dollars. All includes all. Including class ownership. Yes, Your Honor. So as this court held in Brennan and Oracle America before that, incorporation of other rules, the U.N. rules in Oracle America, or the AAA rules in Brennan, all means all. So obviously the procedural issues are going to be for the arbitrator, and the question is really can you delegate the gateway questions, and the parties can, and they can, in fact, through another document, and, in fact, if that document is AAA rules, they can. So guess is complaining that the arbitrator cannot be trusted with deciding class arbitrability, and that complaint reeks of the very hostility to arbitration that the Supreme Court has repeatedly warned against. Now there are two ways, as my colleague suggested, there are two ways of approaching this case. One is the narrow, modest holding, and the other would involve tackling the broader policy questions. To win reversal of Judge Snyder's well-reasoned opinion, guess has to win on both of those approaches. So the narrow way is this. The parties delegated all questions, gateway and procedural, to the arbitrator. It doesn't matter whether class arbitrability in the abstract is a gateway question or a procedural question, because all means all, as we've discussed. Taking this straightforward approach is required by Oracle and Brennan, and because the parties adopted the AAA rules, Judge Snyder was correct. The broad approach to the appeal would require tackling a question of policy, which is perfectly valid, and we argued that in Part 1 of our briefs, and that is that class arbitrability in the abstract is a gateway, is not a gateway question, but a procedural question. A majority of the district courts in this circuit say it's a procedural question, and that makes sense in light of the Supreme Court's jurisprudence in Howsam and Basel and BG Group, and, in fact, going back half a century to AT&T Technologies, First Options, and Granite and other cases. So in terms of the narrow approach, arbitration is fundamentally a matter of contract. We must honor the parties' expectations. Guess crafted the contract's language to delegate all decision-making to the arbitrator, both through the words that it chose to put in its contract and impose on the workers, and by adopting the AAA employment rules. The incorporation of the AAA employment rules constitutes clear and unmistakable agreement to arbitrate arbitrability. So that's what this court said two years ago in Brennan. And the district courts have interpreted, as we said on page 28 of our brief, Brennan to hold that incorporation of AAA employment rules also, of course, delegates class arbitrability because it delegates all issues, and class arbitrability is an issue. In fact, the court can also follow the Fifth Circuit and read that incorporation of the AAA supplementary rules, which are incorporated by the AAA employment rules, delegates gateway issues to the arbitrator as well. So one way of looking at the question is, how much help should courts give parties after the fact when they write a contract that they later decide they don't like? So guess may not like the fact that the arbitrator is deciding things in a certain way. The employees may not like the fact that they're in arbitration or that the arbitrator is deciding things a certain way, but that's what they freely agree to in the contract. And, in fact, guess has already corrected that by changing the contract, and it's chosen to impose a different contract on workers that now selects jams instead of AAA and now has a class waiver, which it didn't in this contract. So the whole point of arbitration is that you get greater speed and efficiency, including earlier finality, in exchange for sacrificing procedural rigor and judicial review. That's what this court held last year in Martin. Guess is torpedoing that efficiency by trying to litigate the who decides question over three lawsuits going on now almost three years. So the broad policy question that the court can tackle if it wishes is, what type of issue is class arbitrability? So we go to the Supreme Court's half century of jurisprudence dating back to Granite and most recently in BG Group. What's a procedural question and what's a gateway question? Gateway questions are again and again referred to by the court in terms of whether there's a valid agreement and does it cover this dispute. And another one could be how is the arbitrator selected. So what does gateway question mean? Gateway means how do you get into arbitration. What do you need to know to go through the gate so that you're in arbitration? Is there an agreement? Does it cover this dispute? So you can look to various Supreme Court cases to understand specifically what that means. In Granite, the Supreme Court said that whether the dispute was covered hinged on when the arbitration agreement was formed, so they needed to know is there a dispute that can go to an arbitrator. In AT&T Technologies, the court asked what types of layoffs there were because that would determine whether under the CBA there was a question that could be arbitrated. So can you even get to arbitration? In first options, does the arbitration agreement bind someone who never signed the arbitration agreement? Again, can you get into arbitration? So it's a gateway question. John Wiley, which predates the recent couple decades of analysis, is particularly helpful because it actually has a gateway issue and a procedural issue. The gateway issue is does the agreement survive the merger? So, again, is there an agreement? And then the procedural question is what are the procedural prerequisites to commencing the arbitration? And John Wiley says— I mean, the Supreme Court has said this is a very large issue. And as I listen to your litany of things that are gateway issues, it doesn't seem to me that that's any different. Well, I think it's important to note that the Supreme Court doesn't analyze how important the issue is. It's not a question of whether it's fundamental, and that's where the Sixth and Third Circuits go wrong, is that it's not a question of how important it is. And that's just not in the cases. It's a question of qualitatively is it a gateway issue? Does it get you to arbitration? Well, it gets the class to arbitration or not. True? I'm sorry? It gets the class to arbitration or not. Right now there is no class. There are five individuals who are seeking to move for class certification. So they have a dispute, an employment dispute, a wage and hour dispute, that is covered by the agreement. That gets them through the gate into arbitration. But I think it's true that the Supreme Court has said class arbitration is a big deal and a class procedure is fundamentally more important to the parties, but that's not how the Supreme Court looks at the question of who decides. Who decides is based on a distinction between is it a gateway issue or is it a procedural issue. So the Reed Elsevier case is the beginning of this flawed jurisprudence from the Sixth, Third, and Fourth Circuits that talks about is it fundamental. So it ignores Basel and Renta Center and this Court's decision in Momot, which talk about gateway versus procedural. So I hope I'm answering your question. So all those cases that I recited talk about can you get to the arbitration. So John Wiley says, I'll quote one sentence, once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition are left to the arbitrator. So it's focusing on can you tell if you get to arbitration and the subject matter is what you're looking at. So the subject matter is not how many depositions do I get. It depends a little bit on how you define it. If you say can you get to arbitration with a class suit, then that is a threshold question. You get to arbitration because you have a dispute over whether you were paid correctly. Well, nobody argues that you can't get to arbitration if you want to do individual claims. What you want to do is get to arbitration with a class claim. And why isn't that a threshold question? Do you get to get to arbitration with a class claim? But I think you can ask that question with respect to anything. These are individual contracts, right? Yes. So what you're trying to take is take five individual contracts and consolidate them together in one class suit. Why is that a threshold question rather than a procedural question? It would be different if you had one contract and you say, well, now we talk about the procedure, how you go about resolving this claim. But you're talking about joining them together into a class. Well, it doesn't matter whether we have one or five, but maybe that's not the focus of your question. The subject matter of the dispute is a wage and hour dispute. That gets you through the gate into arbitration. At that point, the arbitrator gets to decide or the agreement defines the contours of the procedure, and the arbitrator gets significant leeway in making decisions about how many depositions do you get, is joinder allowed. Even in questions of whether what the statute of limitations is or perhaps most helpfully Pacificare, the Supreme Court's Pacificare decision, said the availability of RICO treble damages where the agreement prohibits punitive damages is a procedural question. It's a really important question, and the one party who may be subject to treble damages under RICO could say, that's not what we intended to be subject to or that's not an issue we think the arbitrator should decide, but that's procedural because it's after you get through the gate. I'm not sure if I answered your question, but I'm happy to engage that because I think that's the crux of the broad question. If we hold aside the limited question of what did the parties here agree to and does Brennan govern, then... Let's say that you didn't bring this on behalf of five clients, there was just one. How would the other four get into the... What would happen to their dispute? So you're analogizing them to any other absent class? You bring... Yeah, that's right. Yeah. So regardless of whether we have one or five, those human beings are present as parties in the arbitration. At a certain point, if the arbitrator decides... How are they? I see. Because they bring separate claims? No, let's keep it simple. When we have one individual worker who's pursuing an arbitration, the arbitrator at some point has to issue a clause construction award, as he did here, and determine whether the agreement allows for class arbitration. Let's say he says yes. Then they move for class certification, or he, that individual worker moves for class certification, and notice goes out to the class either to allow them to affirmatively opt in or to, under Rule 23, allow them an opportunity to opt out. So at that point, they are making informed decisions. They defined as the class members who are all similarly situated substantively, as well as signed the same arbitration agreement, because it's a form agreement, everybody's signing the same thing. So those individuals who are subject to that arbitration agreement get to decide, do I consent to this process, do I consent to the jurisdiction of this arbitrator, or do I want to pursue the claim on my own? That's the moment at which it becomes a class action. You're already well into the gate. You've already conducted discovery. You're already charging ahead in arbitration. And that's exactly why we allow arbitrators to decide procedural questions, because we don't want to have all this side litigation interfering with the arbitration. The principal purpose of the FAA is to allow for the speedy and just execution of the party's will in letting them go forward in their arbitration. So that's the moment when you're already halfway down the road where other parties come in and they are individually making decisions about whether to consent to that arbitrator's decision or authority to make a decision. I think the Supreme Court's cases in Howsam, where there was a statute of limitations issue, in BG Group, where there was a local litigation requirement, and other cases, as well as circuit authority, where consolidation of multiple arbitrations or the decision of whether you go with a panel in one state or a panel in another state are all procedural questions. They may feel like important questions, and they may allow for additional individuals to pursue claims together, but they're still procedural questions. I guess I'd like to emphasize, as well, that the fact of the fundamental nature of the procedure and the stakes are not the focus of the Supreme Court's analysis in these cases. So in Reed Elsevier, the Sixth Circuit just ignored the gateway procedural dichotomy and supplemented it with the fundamental test. It also asked the wrong question with respect to the AAA rules. It didn't ask who decides. It asked the second question of whether class arbitration is available. In Huffman, the Sixth Circuit made the same mistake and ignored the AAA rules. In Opolinsky, the Third Circuit made no mention of the AAA rules. In Chesapeake, the Third Circuit said that incorporation of AAA rules generally is insufficient because there are 50 or more sets of rules. Here, we don't have that problem because the parties selected one particular set of rules. And in Del Webb, the Fourth Circuit had virtually no analysis. So in conclusion, defendant appellees respectfully ask the Court to adhere to Brennan and affirm Judge Snyder's narrow holding that upholds the parties' freedom of contract. They chose the AAA rules, clearly and unmistakably delegating all issues to their arbitrator, which includes all gateway issues and all procedural issues, which includes class arbitrability. So the parties have to live with that choice. The Court should decline Guess's invitation to rewrite the contract for it. Thank you, counsel. Thank you, Your Honors. Very briefly, Your Honors, Stolten-Nielsen at page 685 of the U.S. report basically resolves this case. It says the question of class arbitrability, the availability of arbitrability is not the kind of procedural question that's presumptively for the arbitrator. It says you cannot construe ---- Why doesn't all mean all? Pardon me? Why doesn't all mean all? You're asking me? Even if you're right about that, the parties can override that by contract. Yes. Yes, so there are two reasons. So why doesn't all mean all? You're referring to all exactly where, so I'll make sure that I'm being responsive to your question. Wait, did you listen to the ---- Yeah, I know, but the word all doesn't appear. I mean, that was sort of a made-up construct, so I'm having a hard time following the thrust of your question. If ---- I mean, that's what counsel presented the contract said. It doesn't say that? No. No, it's not accurate. I mean, there are two reasons why there's not a delegation. One is ---- It says any dispute or controversy. Yeah, any dispute or controversy. What's the difference between that and all? Because dispute ---- well, first of all, Reed Elsevier deals with that question and says that's not a clear delegation to the arbitrator. And dispute is a capitalized term there. It refers to disputes between the associate and the company involving employment, the contract, et cetera, and the termination of employment. So it refers to just bilateral disputes between the associate and the company. So assuming for the ---- Go ahead. Dispute or controversy. You didn't dispose of controversy. You said dispute or controversy. So you talked about dispute. Controversy must mean something else than dispute because there's an or. So what's left? You've already said what dispute is. We know it's not the dispute between the parties. It must mean something else. But it's a dispute or controversy respecting dispute as a capitalized defined term. And the capitalized defined term, capital D dispute, are bilateral disputes between the associate and the company involving the associate's contract, termination of contract, and similar questions like that. It's totally bilateral disputes between the individual claimant and the company. Right. You just told me again what dispute means. There's also controversy. But controversy modifies capital D dispute. So it takes its meaning from the ---- When it says or? When it's separated by an or. Ors are ---- Neither dispute or controversy in the first time it's used are defined terms. What it's saying is any dispute or controversy relating to the defined term dispute is for the arbitrator. So assuming that the gateway question of class arbitration is for the court, unless the parties unmistakably agree otherwise, why in this case doesn't the specific reference to the model rules of arbitration constitute an unmistakable statement? Because as the Sixth Circuit, Third Circuit ---- No, not the Third Circuit, but the Fifth Circuit's held otherwise in the other Reid case. Well, the Fifth Circuit case is really hard to understand. It's sort of a witch's brew of analysis where they conflate the delegation question with the class arbitrability question, whether it's a question of arbitrability. Right. But here, I mean, let's leave the other circuits out of it for the second because, you know, obviously whichever way we come down, there's going to be a circuit conflict on this. I mean, you drafted this, and you drafted or guest drafted this, or you didn't draft it, but you guest drafted this, and it adopted specific rules, not the generic rules that the Third Circuit was talking about, a whole set of rules. It had a very specific set of rules, and one of them said this class arbitration can be decided by the arbitrator. No, it didn't adopt those rules. It didn't adopt the class ---- Well, what guessed me when it said that the arbitration will be held pursuant to the model rules of arbitration for employment disputes of the American Arbitration Association, then in effect. Those are the bilateral rules which are contained in the record. They also have a reference to the supplemental rules talk about class arbitration. But there's no reference in either this contract or in the bilateral rules that were incorporated into this contract to the supplemental rules. Except that basically, you know, there's case law to the effect that once you agree to the rules, you agree to the supplemental rules, and this is then in effect. So why didn't you know what you were doing? I mean, you drafted the contract. Two things. The cases such as Chesapeake-Appalachia say that that daisy chain of logic doesn't get you to the supplemental rules. Effectively, what you have here, when you incorporate a set of rules, it becomes part of the contract. Right. So you're looking at the contract to see whether or not there's a clear and unmistakable waiver. Excuse me, a clear and unmistakable delegation to the arbitrator. So when you put this language from the arbitration agreement together with the bilateral rules, you don't see any reference whatsoever to class arbitration. There's no reference at all. You can't get to the class supplemental rules which are not incorporated, which are not even referenced. There's no clear and unmistakable intent to adopt those rules, which for all we know the drafters didn't even know about. I mean, they're not mentioned. Except that you agreed to them. I mean, this is your draft. You could identify any set of rules you wanted to, but you chose this. Well, you say we agreed to them. What we agreed to were the bilateral rules. We did not agree to the supplemental rules. As the Third Circuit points out, if you start to go down the road that a reference to the bilateral rules automatically gets you to the supplemental rules, you're basically turning all the presumptions on their head. There has to be a clear and unmistakable delegation. And under the road that you're going down. Well, I understand Judge Cowen's opinion because it was a generic reference to a whole set of rules. And he said, you know, what rules apply. Oh, no, no, no. I'm sorry. I didn't mean to interrupt. No, but I mean, here you have a very specific set of arbitration rules to which you reference. No, Judge Cowen said that he assumed that they were referring to the rule seven of the commercial rules, which is identical to the rule that we have here in the bilateral employment rules. Both give the arbitrator authority to rule on his or her jurisdiction. So how do you deal with the Fifth Circuit? You just said you don't like their decision. Well, the Fifth Circuit, it's an odd decision because, in large part, it's based on their unwillingness to conclude that their prior pre-Stolt-Nielsen decision was, let me put it differently, before Stolt-Nielsen came down, the Fifth Circuit had a decision which said that Basler was authoritative. Right. Stolt-Nielsen comes down. It's no longer authoritative, as all the other sister circuits make clear. The Fifth Circuit panel that considered this case said, well, we can't really overturn our prior decision, so we're going to continue to consider that Basler is good law, and under Basler this kind of language is clear enough to get you to the arbitrator. Right. So if you agree with the Third, Fourth, and Sixth Circuits that Basler is not authoritative on the question of whether this is a question of arbitrability, then the whole intellectual premise of the Fifth Circuit decision is eliminated. Well, perhaps, but we do have a circuit split on the issue. Well, I don't think you would have a circuit split. I mean, the Sixth Circuit basically didn't have any analysis on their two opinions. They just said it's not good enough. The Third Circuit is more reasonable, no question. Well, the Sixth Circuit said, and you're talking, which issue are you talking now about the Sixth Circuit? I'm talking about the AAA incorporation of the AAA rules. I'm not talking about the gateways. Well, okay, the Sixth Circuit analysis was short because the issue was so clear. The standard is a clear and unmistakable delegation, and what the Sixth Circuit said is when you don't mention the class rules, when you have nothing in the arbitration agreement that refers to class arbitration, when you have nothing that delegates the issue specifically to the arbitrator, that the generalized reference to allowing the arbitrator to consider her own jurisdiction is not a clear and unmistakable delegation of the question of arbitrability as to class availability. That's all they needed to say because that's clear and correct, and the Third and Fourth Circuits agree with that. And the Fifth Circuit, I don't think, is contrary to that. I have to read the case differently, but I'll reread it. I put the two together, and they come up with precisely the opposite conclusion, it seems to me. I think when you reread it, you'll see that it's based on the premise that Basil is not authoritative. I understand that. And Basil is not, as I say, Stolt-Nielsen makes clear that arbitrability, class arbitration is not the kind of procedural issue that's presumptively for the arbitrator. No, but there's two separate questions. One is the gateway question, and the other one is whether or not incorporation of the rules of the arbitration association constitutes such an unmistakable and clear delegation. Right? Yeah, and again, under the Fifth… I'm assuming it's a gateway issue. Again, under the Fifth… I'm sorry. No, go ahead. Go ahead. Again, under the Fifth Circuit analysis, you only reach that conclusion when you start with the premise that Basil is authoritative and presumptively gives the issue to the arbitrator to begin with. Because that's an incorrect premise, the thrust of their holding would not be inconsistent with the holding by this court that lines up with the other circuits. Okay. Any further questions? Any other questions? Let me ask you about the employment rules. Does the current version of the employment rules reference the supplemental rules? To my knowledge, no. But I don't think the current version is in the record. The version that was… Well, no, the current version is in the record, and it does not reference the supplemental rules. The current version does not reference the supplemental rules? Does not. Right. You would agree, though, that the current version is the one that matters? If the rules change… Well… If the rules change, arbitration agreement adopts the rules. I know. That ends up being conceptually sort of a quagmire, because the question is whether there was a clear and unmistakable delegation at the time. But… It says the employment rules… I understand. You know, you have this habit of cutting in while other people are speaking. I'm sorry. It's not only rude, but it sort of makes it difficult to follow a train of thought. I'm sorry. I keep thinking of questions. You're not helping your client. I know. But you're not listening. If you don't want me to ask the question, I won't. No, I want you to ask questions, and I want you to respond to it. See, when there's a pause like this, I assume the question is over, and some of the time… But there was no pause. There was no pause. That's how I made an incorrect assumption, and I apologize. I was speaking. I apologize. Yeah. You know what? I think I won't ask the question. I'll just have to ponder it myself. Thank you for your argument. Thank you. The case is just argued to be submitted for decision, and we'll be in recess for the morning. All rise. Thank you.
judges: Kozinski, Thomas, Korman